UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 8:21 Cr 313 CEH-AAS

18 U.S.C. § 1962(d)
18 U.S.C. § 1594(b)
18 U.S.C. § 1589(a)
18 U.S.C. § 371

BLADIMIR MORENO,
EFRAIN CABRERA RODAS,
CHRISTINA GAMEZ,
ALEXANDER VILLATORO MORENO,
        a/k/a "QUICHI," and
GUADALUPE MENDES MENDOZA

SEALED

## INDICTMENT

The Grand Jury charges:

## COUNT ONE
### (RICO Conspiracy)

At all times material to this Indictment:

### A.   INTRODUCTION

#### i.  Individuals

1.      BLADIMIR MORENO was a permanent resident of the United States and a citizen of Mexico who owned and operated Los Villatoros Harvesting or LVH ("LVH").

2.      EFRAIN CABRERA RODAS ("EFRAIN CABRERA") was a citizen of Mexico who worked as a recruiter and supervisor/manager for LVH.

SEALED

3.     CHRISTINA GAMEZ was a citizen of the United States who worked as a supervisor/manager for LVH.

4.     ALEXANDER "QUICHI" VILLATORO MORENO ("ALEXANDER MORENO") was a citizen of Mexico, and BLADIMIR MORENO's brother, who worked as a supervisor/manager for LVH.

5.     GUADALUPE MENDES MENDOZA ("GUADALUPE MENDES") was a citizen of Mexico who worked as a supervisor/manager for LVH.

6.     Unindicted Coconspirator #1 was a citizen of Mexico who worked as a recruiter of H-2A workers for LVH.

7.     Los Villatoros Harvesting, LLC, ("LVH") was an H-2A Farm Labor Contractor and Florida corporation incorporated in Bartow, Florida, in the Middle District of Florida, and did business and operated in Florida, Indiana, Kentucky, Missouri, Mississippi, North Carolina, and Georgia. From in or around 2015 to in or around 2017, LVH employed hundreds of H-2A workers from Mexico.

## ii. Federal Agencies and the H-2A Program

8.     U.S. Citizenship and Immigration Services ("USCIS"), an agency of the U.S. Department of Homeland Security ("DHS"), was responsible for processing and reviewing employment-based petitions pursuant to the Immigration and Nationality Act.

9.    The Wage and Hour Division ("WHD") of the U.S. Department of Labor ("DOL") was responsible for enforcing federal labor laws.

10.    Under the H-2A visa program, a participating employer could bring foreign workers ("H-2A workers") into the United States legally for short-term stays in the United States to fill specific, temporary, or seasonal agricultural jobs, after first establishing the unavailability of domestic workers.

11.    Bringing H-2A workers into the United States under the H-2A program included the following steps: First, an employer who sought to employ H-2A workers was required to apply for and receive a "labor certification" from DOL. Next, the employer was required to submit a petition to USCIS for approval to bring H-2A workers into the United States. Finally, the employer's prospective H-2A workers were required to go to a United States embassy or consulate in their country of origin and apply for an H-2A nonimmigrant visa.

12.    An H-2A Farm Labor Contractor ("H-2A FLC") was a type of employer of H-2A workers. An H-2A FLC provided farmers with H-2A workers and was engaged in at least one of the following activities: recruiting, soliciting, hiring, employing, furnishing, housing, and transporting H-2A workers.

13.    When applying and petitioning for H-2A workers, representatives of the H-2A FLC authorized to act and to sign on behalf of the H-2A FLC were required to submit forms to DOL and USCIS. In those forms, the H-2A FLC's representatives

3

were required to make written representations under penalty of perjury concerning the number of H-2A workers needed for a particular job, the duration of the job, the type of work the H-2A workers would be doing, and the location of the jobsite. The representatives of the H-2A FLC were also required to affirm under penalty of perjury that the H-2A FLC would comply with certain obligations toward its H-2A workers. The H-2A FLC's obligations included: paying its H-2A workers not less than the Adverse Effect Wage Rate (AEWR); paying its H-2A workers at least twice per month; providing its H-2A workers with pay stubs that accurately list their pay rate, hours worked, deductions, and earnings; providing its workers either three meals per day at no more than a DOL-specified cost (currently set at $13.17 per day) or free and convenient kitchen facilities; and complying with rules concerning the payment of its H-2A workers' inbound costs (*i.e.*, under DOL rules FLCs must either pay upfront or reimburse workers in the first work week for costs associated with obtaining an H-2A visa, and, upon completion of 50% of the contract period, pay for border crossing fees and reasonable transportation, lodging, and sustenance expenses) and outbound costs (the reasonable costs associated with returning H-2A workers from their worksites to their homes).

14. When applying and petitioning for H-2A workers, an H-2A FLC had to affirm under penalty of perjury that it would not hold and confiscate the immigration documents of its H-2A workers, seek and receive payments of any kind from H-2A

4

workers for recruiting them, and condition employment in any way on the payment of a fee.

### iii.  Victims

15.     M.O., J.R., A.U., A.N., A.S., D.A., D.R., H.G., I.C., I.V., J.M., L.P., M.C., R.G., R.P., R.R., and S.E., whose identities are known to the Grand Jury, were citizens of Mexico, entered the United States on H-2A visas, and worked for LVH in the Middle District of Florida and other jurisdictions in the United States harvesting cucumbers, red peppers, and other fruits and vegetables, for different periods of time, between in or around December 2015 and in or around December 2017.

### iv. The Enterprise

16.     LVH ("the Enterprise") was an enterprise as that term is defined under 18 U.S.C. § 1961(4), that is, LVH was a corporation and a legal entity. Defendants BLADIMIR MORENO, EFRAIN CABRERA, CHRISTINA GAMEZ, ALEXANDER MORENO, and others known and unknown to the Grand Jury, participated directly and indirectly in the ongoing operation and management of the Enterprise and directed others associated with the Enterprise to carry out activities in furtherance of the Enterprise's purpose.

### v. **Purposes of the Enterprise**

17.    The Enterprise's purposes included enriching Defendants BLADIMIR MORENO, EFRAIN CABRERA, CHRISTINA GAMEZ, and ALEXANDER MORENO, and others known and unknown to the Grand Jury, in various ways, including through:

a.    routinely and consistently engaging in non-compliance with the terms of the H-2A program;

b.    defrauding citizens of Mexico when recruiting them to come work in the United States for LVH as H-2A workers;

c.    defrauding agencies and departments of the United States when applying for H-2A workers;

d.    harboring H-2A workers in the United States after their visas had expired for financial gain;

e.    compelling the labor and services of H-2A workers, which involved, among other actions, forcing H-2A workers to engage in long hours of physically demanding agricultural labor while paying them far less compensation for their work than they were entitled to under the law; and

f.    concealing the scheme through fraudulent and obstructive means.

### B.   MEANS AND METHODS OF THE ENTERPRISE

18.   Among the means and methods used by the defendants and other associates of the Enterprise when conducting and participating in the affairs of the Enterprise, were the following:

a.   Members of the Enterprise would and did use false pretenses to recruit and entice the victims to come to the United States on H-2A visas to work for the defendants, to include lying to the victims about how much they would be paid, their hours of work, the number of days they would have to work, their working conditions, and the amount of reimbursement they would receive for paying recruitment fees and incurring other expenses in order to work for the Enterprise;

b.   Members of the Enterprise would and did require the victims to pay them money upfront for the opportunity to work for the Enterprise and for inbound costs, knowing that doing so would have the effect of throwing the victims into significant debt, a debt that the defendants then used to coerce the victims into working for them;

c.   Members of the Enterprise would and did confiscate the passports of victims to prevent them from leaving the Enterprise's employ;

d.   Members of the Enterprise would and did threaten the victims with arrest, jailtime, and deportation;

e.   Members of the Enterprise would and did warn some of the

victims that if they failed to comply with the defendants' demands, they and their family members would be harmed;

   f.  Members of the Enterprise would and did subject some of the victims to yelling and verbal abuse;

   g.  Members of the Enterprise would and did isolate the victims by limiting their ability to interact with outsiders when unaccompanied by one or more of the Enterprise's employees;

   h.  Members of the Enterprise would and did subject the victims to crowded, unsanitary, and degrading living conditions;

   i.  Members of the Enterprise would and did obtain hundreds of hours of physically demanding labor from each of the victims through employing coercive means, including the means of coercion described in this paragraph;

   j.  Members of the Enterprise would and did defraud the United States by intentionally making false representations in forms submitted to DOL and DHS;

   k.  Members of the Enterprise would and did conceal and harbor alien-workers with expired H-2A visas in lodgings and worksites for the purpose of the defendants' commercial advantage and private gain;

   l.  Members of the Enterprise would and did make false statements and representations to WHD investigators; and

m.     Members of the Enterprise would and did make false statements and representations in Applications for Temporary Employment Certifications (ATEC), which included information detailed in Agricultural and Food Processing Clearance Order ETA Form 790s (Form 790s), submitted to DOL and Immigration Petitions submitted to USCIS.

## C.   **RICO CONSPIRACY**

19.     From in or around September 2015 and continuing through in or around December 2017, in the Middle District of Florida, and elsewhere, the defendants,

BLADIMIR MORENO,
EFRAIN CABRERA,
CHRISTINA GAMEZ,
ALEXANDER MORENO,

and others known and unknown to the Grand Jury, being persons employed by and associated with the LVH Enterprise, which was engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally combine, conspire, confederate, and agree with one another to violate 18 U.S.C. § 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5).

D.   <u>PATTERN OF RACKETEERING ACTIVITY</u>

20.   The pattern of racketeering activity, as defined in 18 U.S.C. § 1961(1) and (5), through which the defendants and their co-conspirators agreed to conduct the affairs of the Enterprise, consisted of multiple acts indictable under:

a.   18 U.S.C. §§ 1589 and 1592 (relating to peonage, slavery, and trafficking in persons);

b.   8 U.S.C. § 1324 (relating to bringing in and harboring certain aliens for purpose of financial gain);

c.   18 U.S.C. § 1546 (relating to fraud and misuse of visas, permits, and other documents); and

d.   18 U.S.C. § 1351 (relating to fraud in foreign labor contracting).

21.   It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the Enterprise's affairs.

E.   <u>OVERT ACTS</u>

22.   In furtherance of the conspiracy and to accomplish the object of the conspiracy, the defendants and other Enterprise members committed, within the Middle District of Florida and elsewhere, the following overt acts, among others:

a.   For DOL ATEC cases H-300-15301-653677 (approved by DOL on or about November 12, 2015),  H-300-16014-010129 (approved by DOL on or

10

about March 3, 2016); H-300-16208-497169 (approved by DOL on or about September 12, 2016), H-300-17065-868157 (approved by DOL on or about March 27, 2017), and H-300-17086-463969 (approved by DOL on or about April 18, 2017), BLADIMIR MORENO knowingly subscribed as true, under penalty of perjury, false statements with respect to material facts in documents required by immigration laws and regulations, and then arranged to have those documents submitted to DOL's Office of Foreign Labor Certification at the Chicago National Processing Center, Chicago, Illinois, and presented to a DOL Certifying Officer. In the documents for each of the DOL ATEC cases listed in the first sentence of this subparagraph, which included Form 790s, BLADIMIR MORENO stated that the Enterprise: (1) would pay H-2A workers no less than the Adverse Effect Wage Rate (AEWR), (2) would provide H-2A workers with housing that complies with local, state, and federal standards, (3) would reimburse H-2A workers for their inbound costs, (4) would refrain from seeking or receiving payment of any kind from H-2A workers for any activity related to obtaining labor certification, including payment of the employer's attorneys' fees, application fees, or recruitment costs, and (5) would ensure that H-2A workers work only at one of the listed fixed-site agricultural businesses, which statements BLADIMIR MORENO then and there knew were false.

      b.     In Immigration Petitions for H-2A workers submitted to USCIS under WAC numbers WAC-16-032-50890 (approved by USCIS on or about

November 20, 2015), WAC-16-107-51435 (approved by USCIS on or about March

16, 2016), WAC-16-248-50932 (approved by USCIS on or about September 19,

2016), WAC-17-124-51320 (approved by USCIS on or about April 4, 2017), and

WAC-17-145-54368 (approved by USCIS on or about May 1, 2017), BLADIMIR

MORENO knowingly subscribed as true, under penalty of perjury, false statements

with respect to material facts contained in documents required by immigration laws

and regulations, and then arranged to have those documents submitted to USCIS,

California Service Center, in the Central District of California, and presented to a

reviewing USCIS official. For each of the cases listed in this subparagraph, in the

documents mailed, wired, and presented to USCIS, BLADIMIR MORENO stated

that the Enterprise: (1) would pay H-2A workers no less than the Adverse Effect

Wage Rate (AEWR), (2) would provide H-2A workers with housing that complies

with local, state, and federal standards, (3) would reimburse H-2A workers for their

inbound costs, (4) would refrain from seeking and receiving payment of any kind

from H-2A workers for any activity related to obtaining labor certification, and

conditioning employment and job placement on some form of compensation and fee,

including payment of the employer's attorney fees, application fees, and recruitment

costs, and (5)  would ensure that H-2A workers work only at one of the listed fixed-

site agricultural businesses, which statements BLADIMIR MORENO then and there

knew were false.

c.      Between in or around November 2015 and in or around July 2017, Unindicted Coconspirator #1 required victims to each pay him fees of approximately 20,000 to 50,000 pesos, often in installments, prior to coming to work for LVH on an H-2A visa. When demanding the payment of fees, Unindicted Coconspirator #1 represented that BLADIMIR MORENO and the Enterprise would partially and fully reimburse these fees.

d.      Between in or around November 2015 and in or around July 2017, Unindicted Coconspirator #1 misrepresented how much money the H-2A workers would make at the Enterprise.

e.      Between in or around December 2016 and in or around May 2017, EFRAIN CABRERA required victims to each pay him fees of between 20,000 and 40,000 pesos, often in installments, prior to coming to the United States to work for LVH on an H-2A visa. When demanding the payment of fees, EFRAIN CABRERA represented that BLADIMIR MORENO and the Enterprise would partially and fully reimburse these fees.

f.      Between in or around December 2016 and in or around May 2017, EFRAIN CABRERA misrepresented how much money the H-2A workers would make at the Enterprise.

g.      Between on or about March 6, 2017 and on or about May 30, 2017, Unindicted Coconspirator #1 made at least three transfers totaling

approximately $44,964 from a bank in Mexico to a Wells Fargo Bank account belonging to the Enterprise.

h.      Between in or around December 2015 and in or around December 2017, ALEXANDER MORENO paid victims working for the Enterprise in Florida, Georgia, Indiana, and North Carolina, only a small fraction of the money the Enterprise owed them under their contracts for the many hours of physically demanding work they had done.

i.      In or around November 2016, in Snow Hill, North Carolina, BLADIMIR MORENO threatened a victim, suggesting that if the victim attempted to escape one of the victim's family members may end up dead.

j.      After I.V.'s visa expired on or about November 27, 2016, BLADIMIR MORENO harbored and concealed I.V. in a lodging and at a workplace in Snow Hill, North Carolina, for about one and a half months, while I.V. continued working for the Enterprise as an agricultural laborer.

k.      Between in or around May 2017 and in or around October 2017, EFRAIN CABRERA threatened one or more of the victims employed by the Enterprise in Tifton, Georgia, telling them that BLADIMIR MORENO would report them to immigration authorities to have them arrested and deported if they left their hotel.

14

l.      Between in or around May 2017 until an unknown date but sometime after December 2017, EFRAIN CABRERA and others known and unknown to the Grand Jury held onto the passports of victims who had worked for the Enterprise in Tifton, Georgia.

m.      In or around May 2017, CHRISTINA GAMEZ and others known and unknown to the Grand Jury confiscated passports belonging to victims working for the Enterprise in Georgia.

n.      Between in or around May 2017 and in or around June 2017, in Tifton, Georgia, CHRISTINA GAMEZ and others known and unknown to the Grand Jury paid victims working for the Enterprise only a small fraction of the money the Enterprise owed them under their contracts for the many hours of physically demanding work they had done.

o.      From on or about May 10, 2017, to on or about August 4, 2017, BLADIMIR MORENO instructed A.U., D.A., J.M., and other H-2A workers employed by LVH on farms in Wauchula, Florida, Bowling Green, Kentucky, and Oaktown and Vincennes, Indiana, to provide false information to WHD investigators about the conditions of their employment, including the amount LVH paid them and whether LVH reimbursed them for their inbound travel expenses, in an effort to obstruct and impede WHD's investigations into LVH's employment practices.

p.     After D.A.'s H-2A visa expired on or about May 25, 2017, BLADIMIR MORENO and EFRAIN CABRERA harbored and concealed D.A. in lodgings and at workplaces in Hayti, Missouri, and Knox County, Indiana, for approximately two months, while D.A. continued working for the Enterprise as an agricultural laborer.

q.     After M.C.'s first H-2A visa expired on or about June 1, 2016, BLADIMIR MORENO harbored and concealed M.C. in lodgings and at workplaces in Georgia, Indiana, and North Carolina for approximately six months while M.C. continued working for the Enterprise as an agricultural laborer.

r.     In or around June 2017, CHRISTINA GAMEZ told one or more of the victims working for the Enterprise that she would have them arrested, jailed, and deported if they did not work harder.

s.     In or around June 2017, BLADIMIR MORENO caused Signature Staffing, a payroll company that prepared payroll and other records for LVH, to send records to WHD Investigator C.D. that BLADIMIR MORENO knew contained falsified information, including falsified information about the hours worked by LVH's H-2A workers in Florida.

t.     On or about July 12, 2017, BLADIMIR MORENO provided fraudulent payroll records to WHD Investigator J.P.

16

u.      On or about July 16, 2017, at BLADIMIR MORENO's direction, CHRISTINA GAMEZ prepared and emailed falsified payroll records to WHD Investigator C.D.

v.      On or about July 16, 2017, CHRISTINA GAMEZ sent Wage and Hour Investigator C.D. an email containing falsified payroll records for H-2A workers employed by the Enterprise.

w.      When WHD Investigator J.P. interviewed BLADIMIR MORENO on or about July 20, 2017, BLADIMIR MORENO falsely stated that: (1) a group of agricultural workers working for him at a farm in Bowling Green, Kentucky, were "seasonal and  migrant workers;" (2) the workers were paying for their own rooms; (3) the workers received paychecks with paystubs for their work; and (4) he did not transport any of the workers to the Bowling Green farm, but instead the workers paid for their own transportation to Bowling Green and he "just gave them a date to get here."  Investigator J.P. reported BLADIMIR MORENO's statements in a Form WH-31. BLADIMIR MORENO certified and signed the form, affirming that all of his reported statements were true and complete, when, as BLADIMIR MORENO knew, the form contained false statements.

x.      On or about July 20, 2017, CHRISTINA GAMEZ sent Wage and Hour Investigator C.D. an email containing false statements about reimbursing the inbound expenses of H-2A workers employed by the Enterprise.

17

y.    After L.P.'s H-2A visa expired on or about July 20, 2017,

BLADIMIR MORENO and ERFAIN CABRERA harbored and concealed L.P. in a

lodging and at a workplace in Tifton, Georgia, for approximately four months while

L.P. continued working for the Enterprise as an agricultural laborer.

z.    After M.C.'s second H-2A visa expired on or about July 20,

2017, BLADIMIR MORENO harbored and concealed M.C. in a lodging and at a

workplace in Georgia, for approximately one month while M.C. continued working

for the Enterprise as an agricultural laborer.

aa.    After R.P.'s H-2A visa expired on or about July 20, 2017,

BLADIMIR MORENO and EFRAIN CABRERA harbored and concealed R.P. in a

lodging and at a workplace in Tifton, Georgia, for approximately four months, while

R.P. continued working for the Enterprise as an agricultural laborer.

bb.    After A.S.'s H-2A visa expired on or about July 20, 2017,

BLADIMIR MORENO and EFRAIN CABRERA harbored and concealed A.S. in a

lodging and at a workplace in Knox County, Indiana, for approximately one month

while A.S. continued working for the Enterprise as an agricultural laborer.

cc.    After J.M.'s H-2A visa expired on or about July 20, 2017,

BLADIMIR MORENO and EFRAIN CABRERA harbored and concealed J.M. in

a lodging and at a workplace in Knox County, Indiana, for approximately one and a

half months while J.M. continued working for the Enterprise as an agricultural

18

laborer.

     dd.    When WHD Investigators J.P. and A.M. interviewed GUADALUPE MENDES on or about July 21, 2017, GUADALUPE MENDES falsely stated that: (1) before supervising agricultural workers working on a farm in Bowling Green, Kentucky, he had no contact with them; (2) he did not transport the workers to the farm; and (3) the workers were receiving payroll checks for their work. Investigators J.P. and A.M. reported GUADALUPE MENDES's statements in a WH-31 Form. GUADALUPE MENDES certified and signed the form, affirming that all of his reported statements were true and complete, when, as GUADALUPE MENDES knew, the form contained false statements.

     ee.    On or about July 30, 2017, in Knox County, Indiana, BLADIMIR MORENO warned victims against complaining about their working conditions to WHD investigators.

     ff.    On or about August 2, 2017, in Knox County, Indiana, ALEXANDER MORENO distributed fake reimbursement receipts to one or more of the victims in an effort to make it appear as if LVH was reimbursing them for their travel-related expenses.

     gg.    When WHD Investigator C.H. interviewed BLADIMIR MORENO on or about August 2, 2017, BLADIMIR MORENO falsely stated that: (1) LVH paid all of its workers working on farms in or near Vincennes and Oaktown,

Knox County, Indiana, a minimum of $13.01 an hour; (2) he paid for all of the
workers' expenses coming into the United States, including "visa, meals, [and]
border crossings . . . because the workers don't have the money to pay for these
costs;" and (3) the workers received payroll stubs with W-2 deductions. WHD
Investigator C.H. reported BLADIMIR MORENO's statements in a WH-31 Form.
BLADIMIR MORENO certified and signed the form, affirming that all of his
reported statements were true, when, as BLADIMIR MORENO knew, the form
contained false statements.

   hh. On or about August 2, 2017, BLADIMIR MORENO,
ALEXANDER MORENO, and CHRISTINA GAMEZ prepared falsified
reimbursement receipts and provided them to H-2A workers working for LVH at
farms located in or near Vincennes and Oaktown, Indiana, in an attempt to mislead
WHD investigators into believing that LVH had reimbursed H-2A workers for their
inbound travel costs.

   ii. When WHD Investigator C.H. interviewed BLADIMIR
MORENO on or about August 4, 2017, BLADIMIR MORENO stated that he "did
not know that any one in Mexico was charging the workers in Mexico for the
opportunity to come and work [for LVH]," when, as BLADIMIR MORENO knew,
his close associates, working as recruiters for LVH in Mexico routinely charged
workers for the opportunity to come and work for LVH. WHD Investigator C.H.

20

reported BLADIMIR MORENO's statements in a WH-31 Form. BLADIMIR MORENO certified and signed the form, affirming that all of his reported statements were true, when, as BLADIMIR MORENO knew, the form contained false statements.

All in violation of 18 U.S.C. § 1962(d).

**COUNT TWO**
**(Conspiracy to Commit Forced Labor)**

1.      Paragraphs 1 through 18 and 22 of Count One of the Indictment are re-alleged as if fully incorporated in this Count Two.

2.      Beginning in or around September 2015, and continuing through in or around December 2017, in the Middle District of Florida and elsewhere, the defendants,

BLADIMIR MORENO,
EFRAIN CABRERA,
CHRISTINA GAMEZ, and
ALEXANDER MORENO,

along with others known and unknown to the Grand Jury, did conspire and agree with each other to knowingly provide and obtain the labor and services of one and more persons by means of force, threats of force, physical restraint, and threats of physical restraint to them and other persons; serious harm and threats of serious harm to them and other persons; abuse and threatened abuse of law and legal process; and a scheme, plan, and pattern intended to cause each person to believe

21

that, if the person did not perform such labor and services, that the person and other persons would suffer serious harm, in violation of 18 U.S.C. § 1589(a).

All in violation of 18 U.S.C. § 1594(b).

## COUNTS THREE THROUGH FIVE
### (Forced Labor)

1.      Paragraphs 1 through 18 of Count One of the Indictment are re-alleged as if fully incorporated in this Counts Three through Five.

2.      Beginning on or about the dates listed below, and continuing to on or about the dates listed below, in the Middle District of Florida and elsewhere, the below-named defendants, and others known and unknown to the Grand Jury, aiding and abetting each other, did knowingly provide and obtain the labor and services of the victims, as named below, by means of force, threats of force, physical restraint, and threats of physical restraint to the victims and other persons; serious harm and threats of serious harm to the victims and other persons; abuse and threatened abuse of law and legal process; and a scheme, plan, and pattern intended to cause the victims, as named below, to believe that, if they did not perform such labor and services, that they and other persons would suffer serious harm:

| COUNT | APPROXIMATE DATES OF FORCED LABOR | VICTIM | DEFENDANTS |
|-------|-----------------------------------|--------|------------|
| **THREE** | June 1, 2017 through November 20, 2017 | A.S. | BLADIMIR MORENO, EFRAIN CABRERA, and CHRISTINA GAMEZ |
| **FOUR** | May 3, 2017 through October 10, 2017 | D.A. | BLADIMIR MORENO and ALEXANDER MORENO |
| **FIVE** | May 2, 2016 through December 1, 2016 | M.C. | BLADIMIR MORENO, EFRAIN CABRERA, and CHRISTINA GAMEZ |

In violation of 18 U.S.C. §§ 1589(a) and 2.

**COUNT SIX**
**(Conspiracy to Obstruct Proceedings Before Agencies)**

**A.   INTRODUCTION**

1.      Paragraphs 1 through 17 of Count One the Indictment are re-alleged as if fully incorporated in this Count Six.

**B.   CONSPIRACY**

2.      Beginning on or about May 10, 2017, and continuing through on or about August 4, 2017, in the Middle District of Florida and elsewhere, the defendants,

BLADIMIR MORENO,
CHRISTINA GAMEZ,
GUADALUPE MENDES,
ALEXANDER MORENO,

did knowingly and willfully combine, conspire, confederate and agree with others, both known and unknown to the Grand Jury, to commit certain offenses against the United States, specifically obstruction of proceedings before United States departments, agencies, and committees, in violation of 18 U.S.C. § 1505.

## C.   MANNER AND MEANS OF THE CONSPIRACY

3.    The Means and Methods of the Enterprise as described in paragraph 18 of Count One of the Indictment are re-alleged and incorporated by reference as though fully set forth herein.

4.    In addition, the manner and means by which the conspirators sought to accomplish the objects of the conspiracy included, among others, the following:

a.    It was part of the conspiracy that conspirators would and did threaten and coerce H2-A workers into avoiding WHD investigators.

b.    It was further part of the conspiracy that conspirators would and did threaten and coerce H2-A workers and other employees of LVH into providing materially false information to WHD investigators.

c.    It was further part of the conspiracy that conspirators would and did make direct, material misrepresentations to WHD investigators.

d.    It was further part of the conspiracy that conspirators would and did create falsified reimbursement receipts for expenses owed to H-2A workers pursuant to LVH's H-2A program obligations (detailed in paragraph 13).

e.     It was further part of the conspiracy that conspirators would and did distribute falsified reimbursement receipts to H2-A workers.

f.     It was further part of the conspiracy that conspirators would and did falsify spreadsheets and other payroll records and would and did knowingly distribute those records to WHD investigators.

g.     It was further part of the conspiracy that conspirators would and did conceal, misrepresent, and hide, and cause to be concealed, misrepresented, and hidden, the purpose of acts performed in furtherance of the conspiracy.

### D.   OVERT ACTS

5.     In furtherance of the conspiracy and to accomplish the objects thereof, the defendants and others known and unknown to the Grand Jury, committed and caused to be committed, among other acts, the overt acts detailed in paragraphs 22.s. through 22.x. and 22.dd. through 22.ii. of Count One of the Indictment, which are re-alleged as if fully incorporated in this Count Six.

All in violation of 18 U.S.C. § 371.

### FORFEITURE

1.     The allegations contained in Counts One through Five are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 1963 and 1594.

2.     Upon conviction of a violation of 18 U.S.C. § 1962, the defendants,

25

BLADIMIR MORENO,
EFRAIN CABRERA,
CHRISTINA GAMEZ, and
ALEXANDER MORENO,

shall forfeit to the United States, pursuant to 18 U.S.C. § 1963:

      a.     any interest acquired or maintained in violation of section 1962;

      b.     any interest in, security of, claim against, or property or contractual right of any kind affording a source of influence over, any enterprise which the defendants established, operated, controlled, conducted, or participated in the conduct of, in violation of section 1962; and

      c.     any property constituting, or derived from, any proceeds obtained, directly or indirectly, from racketeering activity in violation of section 1962.

3.     Upon conviction of a violation of 18 U.S.C. §§ 1594 and/or 1589, the defendants,

BLADIMIR MORENO,
EFRAIN CABRERA,
CHRISTINA GAMEZ, and
ALEXANDER MORENO,

shall forfeit to the United States, pursuant to section 1594:

26

a.   interest in any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such violation, and any property traceable to such property; and

b.   any property, real or personal, constituting or derived from, any proceeds that such person obtained, directly or indirectly, as a result of such violation, or any property traceable to such property.

4.   The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds obtained from the offenses.

5.   If any of the property described above, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be

divided without difficulty, the United States of America shall be entitled to forfeiture

of substitute property pursuant to 18 U.S.C. § 1963(m) and 18 U.S.C. § 853(p),

directly and as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL

_____
FOREPERSON

KARIN HOPPMANN
Acting United States Attorney

_____
FRANCIS D. MURRAY
Assistant United States Attorney

_____
CARLTON C. GAMMONS
Assistant United States Attorney
Chief, Special Victims Section

KRISTEN M. CLARKE
Assistant Attorney General

_____
AVNER SHAPIRO
Trial Attorney
U.S. Department of Justice
Criminal Section, Civil Rights Division

_____
MARYAM ZHURAVITSKY
Trial Attorney
U.S. Department of Justice
Criminal Section, Civil Rights Division

FORM OBD-34
September 21

No.

---

UNITED STATES DISTRICT COURT
Middle District of Florida
Tampa Division

---

THE UNITED STATES OF AMERICA

vs.

BLADIMIR MORENO,
EFRAIN CABRERA RODAS,
CHRISTINA GAMEZ,
ALEXANDER VILLATORO MORENO,
a/k/a "QUICHI," and
GUADALUPE MENDES MENDOZA

---

INDICTMENT

Violations: 18 U.S.C. § 1962(d), 18 U.S.C. § 1594(b), 18 U.S.C. § 1589(a),
and 18 U.S.C. § 371

---

A true bill,

Foreperson

---

Filed in open court this 15th day

of September, 2021.

_____
Clerk

---

Bail $_____

GPO 863 525